IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **22-11175-DD**

United States of America,

Appellee,

- versus -

Joseph Sanfilippo,

Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

_____

<u>BRIEF FOR THE UNITED STATES</u>

Markenzy Lapointe
United States Attorney
Attorney for Appellee
99 N.E. 4th Street
Miami, Florida 33132-2111
305-961-9285

Lisa Tobin Rubio
Chief, Appellate Division

Emily M. Smachetti
Assistant United States Attorney

Nicole D. Mariani
Assistant United States Attorney

Of Counsel

**United States v. Joseph Sanfilippo, Case No. 22-11175-DD**

**Certificate of Interested Persons**

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned certifies that the list set forth below is a complete list of the persons and entities previously included in the CIP included in the appellant's initial brief, and also includes additional persons and entities (designated in bold face) who have an interest in the outcome of this case and were omitted from the appellant's CIP.

Altman, Hon. Roy K.

Bardfeld, Laurence M.

Dominguez, Humberto Rolando

Fajardo Orshan, Ariana

Gonzalez, Juan Antonio

Grove, Daren

Hapner, Adam Michael

Hunt, Hon. Patrick M.

**Lapointe, Markenzy**

**Mariani, Nicole D.**

**Matzkin, Daniel**

**Certificate of Interested Persons (Continued)**

M.S.

Mulvihill, Thomas J.

Rubio, Lisa Tobin

Sanfilippo, Joseph A.

**Smachetti, Emily M.**

Valle, Hon. Alicia O.

s/Nicole D. Mariani
Nicole D. Mariani
Assistant United States Attorney

**Statement Regarding Oral Argument**

The United States of America respectfully suggests that the facts and legal arguments are adequately presented in the briefs and record before this Court and that the decisional process would not be significantly aided by oral argument.

# Table of Contents

**Page**:

Certificate of Interested Persons ......................................................... c-1

Statement Regarding Oral Argument .................................................. i

Table of Contents .............................................................................. ii

Table of Citations ............................................................................. iv

Statement of Jurisdiction .................................................................. xii

Introduction ..................................................................................... 1

Statement of the Issues ..................................................................... 2

Statement of the Case:

      1.    Course of Proceedings and Disposition in the Court Below ........... 3

      2.    Statement of the Facts .................................................... 11

      3.    Standards of Review ..................................................... 13

Summary of the Argument ............................................................... 13

Argument

I.    Sanfilippo's Non-Jurisdictional Challenge to His Conviction Is Barred by His Knowing and Voluntary Unconditional Guilty Plea ...................... 14

# Table of Contents

## (continued)

**Page:**

II.   The District Court Correctly Held the Charge Against Sanfilippo Was Timely Because Filing an Information Tolls the Statute of Limitations. ........................................................................................... 20

III.  The District Court Correctly Held the Charge Against Sanfilippo Was Timely Because the Statute of Limitations Should Be Equitably Tolled. ................................................................................................ 42

Conclusion  ......................................................................................... 47

Certificate of Compliance ................................................................... 49

Certificate of Service  ......................................................................... 50

# Table of Citations

**Cases:** **Page:**

*Badaracco v. Commissioner,*

  464 U.S. 386 (1984)..............................................................45

*Bailey v. Glover,*

  88 U.S. 342 (1874)..............................................................43

*Brown v. Duchesne,*

  60 U.S. 183 (1856)..............................................................45

*Cannon v. University of Chicago,*

  441 U.S. 677 (1979)..............................................................39

*Carter v. United States,*

  520 U.S. 255 (2000)........................................................ 31, 32

*Conn. Nat'l Bank v. Germain,*

  503 U.S. 2439 (1992)..............................................................25

*Fallen v. United States,*

  378 U.S. 139 (1964)..............................................................44

*Gollust v. Mendell,*

  501 U.S. 115 (1991)..............................................................23

*Grant v. Swarthout,*

  862 F.3d 914 (9th Cir. 2017)..............................................................44

**Table of Citations (Continued)**

<u>Cases</u>:                                                                                    <u>Page</u>:

*Homlberg v. Albrecht*,

   327 U.S. 392 (1946) .............................................................43

*Irwin v. Dept. of Veterans Affairs*,

   498 U.S. 89 (1990) ..............................................................43

*Justice v. United States*,

   6 F.3d 1474 (11th Cir. 1993) ..............................................43

*K Mart Corp. v. Cartier, Inc.*,

   486 U.S. 281 (1988) .............................................................29

*Kontrick v. Ryan*,

   540 U.S. 443 (2004) .............................................................24

*Lorillard v. Pons*,

   434 U.S. 575 (1978) .............................................................34

*McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*,

   851 F.3d 1076 (11th Cir. 2017) ..........................................29

*Miccosukee Tribe of Indians of Fla. v. Southern Everglades Restoration,*

   *All.*, 304 F.3d 1076 (11th Cir. 2002) .................................21

*Midatlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*,

   474 U.S. 494 (1986) .............................................................44

## Table of Citations (Continued)

**Cases:**                                                                                                 **Page:**

*Osternek v. E.T. Barwick Indus.*,

    825 F.2d 1521 (11th Cir. 1987)............................................................43

*Patel v. U.S. Att'y Gen.*,

    917 F.3d 1319 (11th Cir. 2019)...........................................................22

*Powers v. Soutland Corp.*,

    4 F.3d 223 (3d Cir. 1993)...................................................................44

*Ratzlaf v. United States*,

    510 U.S. 135 (1994)...........................................................................25

*Toussie v. United States*,

    397 U.S. 112 (1970)...........................................................................45

*United States v. Betancourth*,

    554 F.3d 1329 (11th Cir. 2009)...........................................................15

*United States v. B.G.G.*,

    53 F.4th 1353 (11th Cir. 2022) ............................................. 10, *passim*

*United States v. Briscoe*,

    No. 20-0139, 2020 WL 5076053 (D. Md. Aug. 26, 2020)...................37

*United States v. Burdix-Dana*,

    149 F.3d 741 (7th Cir. 1998)............................................ 34, 35, 36, 41

**Table of Citations (Continued)**

<u>**Cases:**</u>                                                                                      <u>**Page:**</u>

*United States v. Charnay*,

   537 F.2d 341 (9th Cir. 1976)...............................................................40

*United States v. Clawson*,

   104 F.3d 250 (9th Cir. 1996)...............................................................41

*United States v. Cooper*,

   956 F.2d 960 (10th Cir. 1992)..............................................................38

*United States v. Cotton*,

   535 U.S. 625 (2002) ................................................................... 23, 24

*United States v. Daughenbaugh*,

   549 F.3d 1010 (5th Cir. 2008)..............................................................24

*United States v. Hartwell*,

   448 F.3d 707 (4th Cir. 2006)...............................................................27

*United States v. Holmes*,

   No. 18-cr-00258, 2020 WL 6047232 (N.D. Cal. Oct. 13, 2020).........................36

*United States v. Hsin-Yung*,

   97 F. Supp. 2d 24 (D.D.C. 2000) .................................................. 34, 37

*United States v. Jernigan*,

   341 F.3d 1273 (11th Cir. 2003).............................................................20

**Table of Citations (Continued)**

**Cases:**                                                                                           **Page:**

*United States v. Lane*,

   553 F. App'x 878 (11th Cir. 2014) ........................................................................20

*United States v. Levine*,

   658 F.2d 113 (3d Cir. 1981)..................................................................................44

*United States v. Locke*,

   471 U.S. 84 (1985)................................................................................................43

*United States v. Machado*,

   No. 04-10232, 2005 WL 2886213 (D. Mass. Nov. 3, 2005) ................................37

*United States v. Macklin*,

   535 F.2d 191 (2d Cir. 1976)..................................................................................40

*United States v. Marifat*,

   No. 2:17-0189, 2018 WL 1806690 (E.D. Cal. Apr. 18, 2018)...................... 37, 38

*United States v. Marion*,

   404 U.S. 307 (1971) ...................................................................................... 27, 44

*United States v. McIntosh*,

   704 F.3d 894 (11th Cir. 2013)..............................................................................24

*United States v. Midgley*,

   142 F.3d 174 (3d Cir. 1998).................................................................................44

**Table of Citations (Continued)**

<u>Cases</u>:                                                                                   <u>Page</u>:

*United States v. Najjar*,

   283 F.3d 1306 (11th Cir. 2002)..................................................................14

*United States v. Ochoa*,

   353 F. App'x 390 (11th Cir. 2009) .......................................... 16, 18, 19

*United States v. Patti*,

   338 F.3d 1317 (11th Cir. 2003)................................................ 13, 14

*United States v. Pierre*,

   120 F.3d 1153 (11th Cir. 1997).......................................... 15, 16, 18, 19

*United States v. Ratcliff*,

   245 F.3d 1246 (11th Cir. 2001)..................................................................27

*United States v. Rodriguez-Vazquez*,

   649 F. App'x 819 (11th Cir. 2016) .......................................................20

*United States v. Rojas*,

   718 F.3d 1317 (11th Cir. 2013)................................................ 13, 21

*United States v. Rosecan*,

   528 F. Supp. 3d 1289 (S.D. Fla. 2021) ...............................................36

*United States v. Sanchez*,

   269 F.3d 1250 (11th Cir. 2001)..................................................................24

**Table of Citations (Continued)**

**Cases:**                                                                                    **Page:**

*United States v. Stewart*,

   425 F. Supp. 2d 727 (E.D.VA. 2006) ...................................................37

*United States v. Terlingo*,

   327 F.3d 216 (3d Cir. 2003)...................................................45

*United States v. Thompson*,

   287 F.3d 1244 (10th Cir. 2002)...................................................36

*United States v. Watson*,

   941 F. Supp. 601 (N.D. Wa. 1996) .................................... 34, 37

*United States v. Weiss*,

   588 F. Supp. 3d 622 (E.D. Pa. 2022) ...................................36

*United States v. Yunis*,

   723 F.2d 795 (11th Cir. 1984).................................................14

*United States v. Zuniga-Arteaga*,

   681 F.3d 1220 (11th Cir. 2012)...................................................22

*White v. Mercury Marine, Div. of Brunswick,*

   *Inv.*, 129 F.3d 1428 (11th Cir. 1997) ............................... 26, 34

*Young v. United States*,

   535 U.S. 43 (2002)...................................................43

**Table of Citations (Continued)**

**Statutes & Other Authorities:**                                    **Page:**

18 U.S.C. § 1343 ........................................................................................ 4, 5

18 U.S.C. § 3231 ...................................................................................... xii, 23

18 U.S.C. § 3282 ...................................................................................... 3, *passim*

18 U.S.C. § 3288 ...................................................................................... 2, *passim*

18 U.S.C. § 3289 ..........................................................................................29

21 U.S.C. § 5324 ..........................................................................................4, 5

28 U.S.C. § 1291 ........................................................................................... xii

Fed. R. App. P. 26.1 .................................................................................... c-1

Fed. R. App. P. 32 ........................................................................................49

Fed. R. App. P.4 ........................................................................................... xii

Fed. R. Crim. P. 6 .................................................................................... 30, 31

Fed. R. Crim. P. 7....................................................................................... 6, *passim*

Fed. R. Crim. P. 9........................................................................................23

Fed. R. Crim. P. 11......................................................................................15

Fed. R. Crim. P. 48........................................................................................5

**Other Authorities:**

Pub. L. 88-520................................................................................................34

**Statement of Jurisdiction**

This is an appeal from a final judgment of the United States District Court for the Southern District of Florida in a criminal case. The district court entered judgment against Joseph Sanfilippo on March 28, 2022 (DE:42). The district court had jurisdiction to enter the judgment under 18 U.S.C. § 3231. Sanfilippo filed a timely notice of appeal on April 11, 2022 (DE:43). *See* Fed. R. App. P.4(b). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## Introduction

This case arises from the unprecedented scenario that faced judges, prosecutors, and criminal defendants in the Southern District of Florida during 2020 when the court suspended grand jury proceedings for nearly eight months during the COVID-19 pandemic. The statute of limitations on Sanfilippo's wire fraud charge expired during the last month of that unpredictable and lengthy grand jury suspension. To preserve the charge against Sanfilippo when there were no grand juries to find indictments, the Government charged him in an information that it filed with the district court and hand delivered to Sanfilippo. Sanfilippo never responded to that information, so, less than two months after limited grand juries resumed meeting in the Southern District of Florida, the Government charged Sanfilippo with the same crimes in an indictment and dismissed the information. Sanfilippo moved to dismiss the indictment as untimely—noting that the grand jury issued it after the statute of limitations expired—but the district court denied that motion, finding that filing the information with the district court tolled the statute of limitations. Sanfilippo reiterates that statute-of-limitations argument before this Court, and this Court should reject it for any, or all, of three reasons.

First, this Court can dismiss Sanfilippo's appeal without considering its merits, because Sanfilippo waived his non-jurisdictional statute-of-limitations challenge to his indictment when he entered his knowing and voluntary

unconditional guilty plea. Discussions after the district court accepted Sanfilippo's unconditional guilty plea about the impact a pending decision of this Court could have on the statute-of-limitations issue did not transform Sanfilippo's plea into a conditional one that would permit this appeal. Second, this Court can affirm Sanfilippo's conviction because the district court correctly held that, under the plain meaning of the statute of limitations and the Federal Rules of Criminal Procedure, Sanfilippo's indictment was timely. The information was "instituted" within five years of his offense conduct and the later indictment was timely under the saving clause in 18 U.S.C. §3288. Third, this Court can affirm Sanfilippo's conviction because the statute of limitations should be equitably tolled for less than three months considering the nearly eight-month COVID-19 grand jury suspension in the Southern District of Florida and the limited availability of grand juries when they finally did resume in late November 2020.

### Statement of the Issues

I.    Whether Sanfilippo's undisputedly knowing and voluntary guilty plea, which was made pursuant to a written plea agreement stating that he was entering an unconditional guilty plea, waived his non-jurisdictional statute-of-limitations challenge to his conviction.

II.   Whether the district court correctly held that the charges against Sanfilippo were timely because filing an information during the eight-month period when

indictments could not be obtained during the COVID-19 pandemic tolled the statute of limitations provided in 18 U.S.C. § 3282.

III.    Whether the statute of limitations should be equitably tolled by less than three months to January 14, 2021, given the Southern District of Florida's decision to suspend grand juries for nearly eight months between March 26 and November 17, 2020, and to only allow their limited return during the rest of 2020.

## Statement of the Case

## 1.    <u>Course of Proceedings and Disposition in the Court Below</u>

On March 26, 2020, in response to the public health crisis created by the COVID-19 pandemic, the Southern District of Florida issued a district-wide Administrative Order suspending all grand jury sessions until April 27, 2020, "pending further Order of the Court" (S.D. Fla. Admin. Order 2020-22). Each month after that through August 2020, the Southern District of Florida extended that grand jury suspension for one more month (*see* S.D. Fla. Admin. Order 2020-24; S.D. Fla. Admin. Order 2020-33; S.D. Fla. Admin. Order 2020-41). On August 11, 2020, the Southern District of Florida extended the suspension of grand jury proceedings until January 4, 2021 (S.D. Fla. Admin. Order 2020-53). On October 20, 2020, the Southern District of Florida altered that order, directing that, beginning on November 17, 2020, it would permit grand juries to resume in a minimal way; no

more than two grand jury proceedings were permitted per week (S.D. Fla. Admin. Order 2020-76).

On October 23, 2020, while grand juries remained suspended, the Government filed an information with the district court that charged Sanfilippo with four counts of wire fraud, in violation of 18 U.S.C. § 1343, and four counts of structuring, in violation of 21 U.S.C. § 5324, all having occurred in late October and early November 2015 ("Information") (Case No. 20-60112 DE:1).[1] On November 2, 2020, a Federal Bureau of Investigation (FBI) agent hand delivered a copy of the Information along with a letter advising the retention of counsel to Sanfilippo; the letter instructed Sanfilippo on obtaining court-appointed counsel and provided the contact information for the prosecuting attorney and the FBI agent (DE:10:2; DE:10-1; DE:17:2).[2] Sanfilippo, however, did not respond to the Information and chose not to retain counsel (DE:10:2). Because of the continuing COVID-19 pandemic and its accompanying health and safety concerns, the Government did not seek a warrant for Sanfilippo's arrest, or a summons to appear, on the charges (DE:17:2).

---

[1] At first, this case was assigned to Judge Dimitrouleas with case number 20-601112. When the indictment was returned on January 14, 2021, the case was given a new number, 21-60006, and re-assigned to Judge Altman.

[2] In his brief, Sanfilippo states, "[t]he Government did not serve the Appellant with the Information, or otherwise advise the Appellant of its existence" (Br.:3), but the record makes clear that assertion is false (DE:10:2; DE:10-1; DE:17:2).

On November 17, 2020, limited grand jury sessions resumed in the Southern District of Florida (S.D. Fla. Admin. Order 2020-76). Less than two months later, on January 14, 2021, a Southern District of Florida grand jury charged Sanfilippo with four counts of wire fraud, in violation of 18 U.S.C. § 1343, and four counts of structuring, in violation of 21 U.S.C. § 5324, all having occurred in late October and early November 2015 ("Indictment") (DE:1). The charges were identical to the ones in the Information (*id.*).

The Government then moved, under Federal Rule of Criminal Procedure 48(a) to dismiss the Information, explaining that it had been replaced by the Indictment (Case No. 20-60112 DE:5). The Government elaborated that "because of concerns about the running of the statute of limitations on certain counts in this particular case" while grand juries were suspended, it "filed the instant Information on October 23, 2020, to 'institute' the prosecution within the meaning of 18 U.S.C. § 3282(a)" (*id.*). The Government explained that, although it advised Sanfilippo of the Information, Sanfilippo had not responded—either to consent to or object to prosecution by the Information—so obtaining the Indictment allowed the case to proceed forward (*id.*). On February 26, 2021, the district court granted the Government's motion to dismiss the Information (*id.*).

On March 26, 2021, Sanfilippo moved to dismiss the Indictment, arguing that the charges were untimely because the grand jury found the Indictment after the

statute of limitations expired (DE:9). He specified that his alleged offense conduct ended by November 4, 2015; a five-year statute of limitations applied to his charged crimes; and the grand jury did not find the indictment until January 14, 2021, which was more than five years after November 2015 (DE:9 at 1-4). Sanfilippo did not mention the Information in his motion to dismiss (DE:9).

The Government opposed Sanfilippo's motion, alerting the district court that it had filed the Information, which contained identical charges, on October 23, 2020 (DE:10). The Government explained that filing the Information tolled the statute of limitations, because the plain language of 18 U.S.C. § 3282(a) states that the statute of limitations is tolled when an "information" is "instituted" (DE:10:4). And, the Government continued, the word "instituted" only requires that the case be begun, which occurs when the district court receives an information as that gives the court subject matter jurisdiction and the authority to issue a warrant or summons for the defendant (DE:10:4-5). Accordingly, the Government concluded, filing the Information tolled the statute of limitations even though Sanfilippo never entered his consent (or objection) to being prosecuted via an information as is required by Federal Rule of Criminal Procedure 7(b) for the case to proceed to adjudication (DE:10:4). And, the Government explained, because the Information tolled the statute of limitations, the Indictment was timely under 18 U.S.C. § 3288, which gives

the Government a six-month grace period to file an indictment after an information is "dismissed for any reason" other than being untimely (DE:10:9).

The Government also argued that, even if filing the Information did not toll the statute of limitations, the charges remained timely because, given the nearly eight-month grand jury suspension, the statute of limitations should be equitably tolled for less than three months until Indictment was returned on January 14, 2021 (DE:10:2, 11-14). The Government explained that the Supreme Court has held that equitable tolling should be read into every federal statute of limitations and that "a pandemic requiring suspension of grand juries is a compelling case for such tolling" particularly where, as here, the Government filed a charging document within the statute of limitations period to give the defendant notice of the allegations (DE:10:11-13).

Sanfilippo replied, acknowledging the Information's existence (DE:11). But he argued that filing the Information did not toll the statute of limitations, instead contending that the statute of limitations is not tolled until the defendant waives prosecution by indictment as required by Federal Rule of Criminal Procedure 7(b) (*id.*). Sanfilippo did not address the Government's equitable tolling argument (*id.*).

On November 19, 2021, the district court denied Sanfilippo's motion to dismiss the Indictment, finding the charges against him were timely (DE:21). First, the district court held that an information is instituted, and thus tolls the statute of

limitations, when it is filed with the court because that is all the plain language of 18 U.S.C. § 3282(a) requires (DE:21:4-6). The district court specified that, under its plain dictionary meaning, the verb "instituted" means "causing to come into existence," while the verb "prosecuted" means "to institute *and* pursue a criminal action against a person" (DE:21:6). Thus, the district court concluded, because an information comes into existence when it is filed, an information is instituted when it is filed even if the defendant cannot be adjudicated on it (*id.*). The district court also explained that the legislative history of § 3282(a) demonstrated that, from 1790 through the present, Congress intended the word "instituted" to require only the filing of the information with the district court (DE:21:8-14). And the district court explained that, because the Information was timely, the Government could bring those same charges in the Indictment under the 18 U.S.C. § 3288 saving clause, which gives the Government another six months to bring charges first made in a timely information that was then dismissed (DE:21:14-15). Thus, the district court concluded, because the Information was filed within the statute of limitations, because the Information was dismissed without prejudice, because the Indictment was filed less than six months after the Information was dismissed, and because the Indictment was "virtually identical" to the Information, the charges in the Indictment were timely (DE:21:16-17).

Soon after, Sanfilippo entered into an unconditional written plea agreement with the Government, agreeing to plead guilty to committing wire fraud on November 2, 2015, in exchange for the dismissal of the other seven counts against him (DE:28). In that plea agreement, Sanfilippo did not reserve his right to appeal the denial of his motion to dismiss the Indictment, and he averred that "[t]his is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings" (DE:28:5).

During his plea hearing, Sanfilippo stated that he signed the plea agreement, that he fully discussed the plea agreement and its contents with his counsel, that he fully understood the plea agreement, and that the plea agreement "fully reflect[ed] [his] agreement with the United States" (DE:56:8). The district court then summarized the written plea agreement for Sanfilippo (DE:56:8-14). During that summary, the district court reminded Sanfilippo that the last paragraph "says that this plea agreement represents the entire agreement and understanding between you and the United States, and that there are no other secret or mysterious agreements, promise, or guarantees that have been made to you in order to induce you to plead guilty in this case" (DE:26:14). Sanfilippo confirmed that statement was true, and he also confirmed that he understood the rights that he was waiving by pleading guilty (DE:56:14-17). Sanfilippo's counsel confirmed that his client understood the rights that he was waiving by pleading guilty (DE:56:21). Sanfilippo then pleaded

9

guilty, and the district court accepted that plea and adjudicated Sanfilippo guilty of committing wire fraud on November 2, 2015 (DE:56:21-22).

After the plea colloquy ended, the Government noted that, in another case, *United States v. B.G.G.*, this Court could decide whether filing an information tolls the statute of limitations (DE:56:24).[3]  The Government said that, if *B.G.G.* held that filing an information did not toll the statute of limitations, "I think . . . we would probably . . . allow him to withdraw his guilty plea, and then we would have to dismiss the charges, because the statute of limitations had run, and he'd file a motion to dismiss based on the statute of limitations again, in which case it would be granted at that point" (DE:56:25). The district court responded "[t]hat makes sense to me" (DE:56:25). There was no discussion about Sanfilippo's ability to appeal his conviction on any ground (*id.*).

On March 28, 2022, the district court sentenced Sanfilippo to 24 months of imprisonment (DE:56:33). During Sanfilippo's sentencing hearing, the Government and district court quickly discussed that this Court had not yet issued its opinion in *B.G.G.* (DE:56:9). In explaining the reasons for its chosen sentence, the district court

---

[3] In an opinion issued about a year after Sanfilippo pleaded guilty, this Court, in *United States v. B.G.G.*, declined to decide whether filing an information tolls the statute of limitations. 53 F.4th 1353, 1361 n.3 (11th Cir. 2022) ("Because we conclude that the district court abused its discretion in dismissing the information with prejudice, we do not reach the issue of whether filing an information without a waiver of indictment institutes the prosecution, and tolls the statute of limitations, under sections 3282(a) and 3288.").

added, "[n]ow, by the way, the Eleventh Circuit might reverse me on the statute of limitations issue. He might serve no time. Let me be clear. Pandemic came—he might be the luckiest man on the face of the earth. I tried my best to get it right" (DE:56:25). The district court also instructed Sanfilippo, "[a]nd, by the way, if the Eleventh Circuit comes down and reverses me, then you got to file a notice for a hearing right away, we'll come in, and Mr. Sanfilippo may never end up spending some time in prison. I don't know. We'll see what happens" (DE:56:38).

About two weeks later, Sanfilippo filed this appeal of his conviction (DE:42).

## 2.    Statement of the Facts

In 2008, Sanfilippo met M.S., a wealthy widow, and began a romantic relationship with her (DE:29). Sanfilippo told M.S. that he worked in sports and construction, mostly in New York, and they spent a few years in a long-distance relationship before breaking up (*id.*). But, in 2013, Sanfilippo told M.S. that he was moving to South Florida, and they rekindled their relationship (*id.*).

In 2015, Sanfilippo persuaded M.S. to invest in a Cayman Island company, Cayman Shipping, that he told her was operated by his friend "Jacob Rosenthal" (DE:29). Sanfilippo told M.S. that this investment was a "very exclusive and private offering," which was why there were not a lot of other investors involved (*id.*). M.S. agreed to invest, and then Sanfilippo told her that, because Rosenthal only trusted him, she had to write her investment checks to him, he would deposit those checks,

and then he would send her money to Rosenthal (*id.*). In October and November 2015, M.S. wrote four checks to Sanfilippo totaling $100,000, which she believed were for investment in Cayman Shipping (*id.*).

For example, on November 2, 2015, M.S. wrote Sanfilippo a check for $25,000 (DE:29). Sanfilippo deposited that check in his account on November 3, 2015; he immediately withdrew $12,900 from that account by retrieving $9,900 from the teller and another $3,000 from the ATM; and, the next day, he withdrew another $12,900 from that account by retrieving $9,900 from the teller and another $3,000 from the ATM (*id.*). M.S. never received any payments from or other information about Cayman Shipping (*id.*).

In April 2017, M.S. hired an attorney to send a demand letter to Cayman Shipping (DE:29). The letter was returned as undeliverable, and M.S. learned that none of the contact information she had for Cayman Shipping was legitimate and that no one had every heard of either Jacob Rosenthal or Cayman Shipping (*id.*). A subsequent Government investigation revealed that no one named Jacob Rosenthal lived in the Cayman Islands, Cayman Shipping did not exist, and that Sanfilippo been withdrawing the "investment money" that M.S. gave him as cash in increments of less than $10,000 right after he deposited each of her investment checks (*id.*).

3.   **Standards of Review**

This Court reviews de novo whether a voluntary unconditional guilty plea waives the ability to appeal a ruling on a pretrial motion. *United States v. Patti*, 338 F.3d 1317, 1320 n.4 (11th Cir. 2003). This Court also reviews de novo the denial of a motion to dismiss an indictment as untimely. *United States v. Rojas*, 718 F.3d 1317, 1319 (11th Cir. 2013).

### Summary of the Argument

Sanfilippo's single challenge to his conviction fails for any or all of three reasons. First, Sanfilippo's unconditional guilty plea, which he does not dispute was knowing and voluntary, waived his argument that the charges in the Indictment were untimely. Second, even if Sanfilippo had not waived his argument, it fails because the district court correctly held that filing an information tolls the statute of limitations in 18 U.S.C. § 3282(a). As the plain language of § 3282(a) and nearly all the case law makes clear, filing an information tolls the statute of limitations no matter when the defendant enters his Federal Rule of Criminal Procedure 7(b) waiver of prosecution by indictment. Accordingly, the charges in the Information were timely and, under the 18 U.S.C. § 3288 saving clause for subsequent charging documents, the Indictment was also timely. Third, even if Sanfilippo had not waived his argument and even if the statute of limitations were not tolled by filing an information, the district court still correctly held that the indictment was timely.

13

Because of the unpredictable eight-month Southern District of Florida grand jury suspension during the COVID-19 pandemic, the statute of limitations should be equitably tolled by less than three months until the indictment was returned on January 14, 2021. Accordingly, this Court should either dismiss Sanfilippo's appeal or affirm Sanfilippo's conviction.

## Argument

### I.    Sanfilippo's Non-Jurisdictional Challenge to His Conviction Is Barred by His Knowing and Voluntary Unconditional Guilty Plea.

This Court need not consider the merits of Sanfilippo's challenge to the timeliness of the Indictment, because he waived this argument when, in exchange for having seven counts against him dismissed, he knowingly and voluntarily entered an unconditional guilty plea to wire fraud.

"Generally, a voluntary, unconditional guilty plea waives all non-jurisdictional defects in the proceedings." *Patti*, 337 F.3d at 1320; *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir. 1984) ("A defendant's [unconditional] plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings."). And an allegation that the charges in an indictment are untimely is a non-jurisdictional defect in the proceedings. *See United States v. Najjar*, 283 F.3d 1306, 1308-09 (11th Cir. 2002) (holding that the statute of limitations is an affirmative defense that a defendant waives by pleading guilty). Thus, if Sanfilippo's knowing and voluntary

14

guilty plea was unconditional, he waived his statute of limitations challenge to the Indictment.

It was.

A "conditional plea" permits a defendant who pleads guilty to preserve certain non-jurisdictional issues for appellate review that would otherwise be waived by the guilty plea. *See United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997)*.* But, to have a valid conditional plea, the defendant must follow the very particular requirements of Federal Rule of Criminal Procedure 11(a)(2). *Id.* Under Rule 11(a)(2), a conditional plea is valid only if (1) there is a written agreement that states that the defendant may seek appellate review of an adverse determination of a specified pretrial motion; (2) the Government expressly consented to the conditional plea; and (3) the district court expressly approved the conditional plea. Fed. R. Crim. P. 11(a)(2); *see also United States v. Betancourth*, 554 F.3d 1329, 1331-32 (11th Cir. 2009) (holding defendant's expressed desire to reserve an issue for appeal did not convert an unconditional guilty plea into a conditional one absent a written agreement and the government's consent).

And that writing requirement is important. Rule 11's Advisory Committee Notes explain that it added the writing requirement to "ensure careful attention to any conditional plea" because "[b]y requiring this added step, it will be possible to avoid entry of a conditional plea without the considered acquiescence of the

government." *Pierre*, 120 F.3d at 1155 n.2 (11th Cir. 1997) (quoting Fed. R. Civ. P. 11 Advisory Comm. Notes); *United States v. Ochoa*, 353 F. App'x 390, 392 (11th Cir. 2009) (noting this Court has "held that conditional pleas must comply with Rule 11(a)(2), in that pretrial issues must be preserved in writing and the government must consent expressly to the entry of a conditional plea"). To that end, this Court held that "[f]or conditional pleas, consent is not a neutral attitude," but, instead, "means express approval: direct assent requiring no inference or implication" that is not satisfied by the Government's silence even after the district court mistakenly says the defendant can appeal an issue. *Pierre*, 120 F.3d at 1156.

Sanfilippo did not enter a conditional plea in compliance with Rule 11(a)(2).

First, Sanfilippo did not preserve his ability to appeal the denial of his motion to dismiss the Indictment as untimely in writing. Instead, in his written plea agreement, Sanfilippo agreed to plead guilty without conditions, and he averred that "[t]his is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings" (DE:28:5). Accordingly, because of that lack of writing, Sanfilippo's guilty plea cannot be conditional and he waived his statute-of-limitations argument. *Pierre*, 120 F.3d at 1155 (stating a "conditional plea *must* be in writing and *must* be consented to by the court and the government" (emphasis added)).

16

Second, neither the Government nor the district court consented to a conditional guilty plea that preserved Sanfilippo's ability to appeal the denial of his motion to dismiss the Indictment as untimely. In his brief, Sanfilippo contends that he "plead guilty to Count Four of the Indictment *after* agreement between the parties indicated on the record that depending on how [this Court ruled on *B.G.G.*]" he could "be exonerated on that point" (Br.:6) (emphasis added). But that is not what happened.

At the beginning of his plea colloquy, Sanfilippo confirmed that he signed the plea agreement, he fully discussed the plea agreement and its contents with his counsel, he fully understood the plea agreement, and the plea agreement "fully reflect[ed] [his] agreement with the United States" (DE:56:8). The district court summarized the plea agreement—which, as explained above, was unconditional—for Sanfilippo, reminding him, "this plea agreement represents the entire agreement and understanding between you and the United States" (DE:56:8-14). Sanfilippo confirmed that statement was true, and Sanfilippo and his counsel confirmed that he understood the rights that he was waiving by pleading guilty (DE:56:14-17, 21). Sanfilippo then pleaded guilty, and the district court accepted that plea and adjudicated Sanfilippo guilty (DE:56:21-22). There was no mention during that plea colloquy of Sanfilippo's ability to appeal his conviction, let alone to challenge the timeliness of the Indictment on appeal.

17

That silence on any potential plans for an appeal before Sanfilippo pleaded guilty dooms any claim that this was a conditional plea. *Pierre*, 120 F.3d at 1156; *see also Ochoa*, 353 F. App'x at 393 ("Because we have previously held that the government's consent to the entry of a conditional plea must be express, and because there is no evidence on the record of any express consent by the government, Ochoa's guilty plea did not meet the requirements of Rule 11(a)(2), and, therefore, was not conditional."). And the timing of that discussion is paramount. "[T]he language of Rule 11(a)(2) focuses on the district court proceedings, stating that both the court and the government must consent to the entry of a conditional plea *before* such a plea can be entered." *Ochoa*, 353 F. App'x at 393 (emphasis added).

Nor was there any discussion *after* the district court accepted Sanfilippo's guilty plea about his ability to appeal his conviction, let alone a discussion sufficient to somehow convert his plea to a conditional one. After Sanfilippo was adjudicated guilty, the Government and the district court discussed this Court's pending opinion in *B.G.G.*, noting this Court could decide whether filing an information tolls the statute of limitations in § 3282(a) (DE:56:24). During that hypothetical debate about what might happen, the Government said that it "*would probably*" permit Sanfilippo "*to withdraw his guilty plea*" and so that he could again move to dismiss the Indictment as untimely (DE:56:25) (emphasis added). All that language was precatory and only referenced Sanfilippo's ability to withdraw his guilty plea; none

18

of it was explicit consent for Sanfilippo to raise a non-jurisdictional challenge to his conviction on appeal (*id.*). Indeed, there was no discussion about Sanfilippo's ability to appeal his conviction on any ground at any point during the proceedings (*id.*). And, of course, that hypothetical scenario never came to pass both because this Court did not issue its opinion in *B.G.G.* until about six months after Sanfilippo was sentenced and because *B.G.G.* declined to decide whether filing an information tolls the statute of limitations in § 3282(a). *See United States v. B.G.G.*, 53 F.4th 1353, 1361 n.3 (11th Cir. 2022).

Of course, if a defendant entered a guilty plea on the reasonable, but mistaken, belief that he preserved an issue for appeal based on statements made by the Government or the district court, then his plea would not be knowing and voluntary and this Court could vacate it. *Pierre*, 120 F.3d at 1156. For example, in *Pierre*, the defendant's unconditional guilty plea was not knowing and voluntary because, before the defendant entered his plea, the district court told him that he had preserved a non-jurisdictional speedy trial issue for appeal, the defendant said that he would plead guilty only on that condition, and defense counsel explicitly tried to preserve the issue for appeal. *Id.* at 1155. That did not occur here.

Sanfilippo's plea colloquy contained no representations by the district court, the Government, Sanfilippo, or Sanfilippo's counsel that, in entering his guilty plea, Sanfilippo intended to preserve the statute of limitations issue for appeal. Instead,

19

Sanfilippo pleaded guilty to an unconditional written plea agreement and there was no discussion of him appealing his conviction on any grounds during his plea colloquy. Likely for that reason and conclusive here, Sanfilippo has never argued before either this Court or the district court that his guilty plea was not knowing or voluntary. Because Sanfilippo has never contested the knowing and voluntary nature of his guilty plea, he has abandoned any such argument. *United States v. Jernigan*, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003); *see also United States v. Rodriguez-Vazquez*, 649 F. App'x 819, 819 (11th Cir. 2016) (holding that defendants who entered an unconditional guilty plea abandoned any argument that their plea was not knowing and voluntary by failing to raise it in his brief); *United States v. Lane*, 553 F. App'x 878, 880 n.3 (11th Cir. 2014) ("Lane has not contested the voluntariness of his guilty plea; therefore, any argument to the contrary has been abandoned.").

In sum, Sanfilippo's guilty plea was unconditional, Sanfilippo's unconditional guilty plea was undisputedly knowing and voluntary, and Sanfilippo's unconditional, knowing, and voluntary guilty plea waived his argument that the Indictment was untimely. Accordingly, this Court can dismiss Sanfilippo's appeal.

## II. The District Court Correctly Held the Charge Against Sanfilippo Was Timely Because Filing an Information Tolls the Statute of Limitations.

Under 18 U.S.C. § 3282(a), the five-year statute of limitations applicable to most federal crimes—including Sanfilippo's wire fraud charge—is tolled when either "the indictment is found or the information is instituted." 18 U.S.C. § 3282(a).

20

For Sanfilippo's wire fraud charge, that five-year period expired on November 4, 2020. The Government filed the Information bringing that charge—which was identical to the charge brought later in the Indictment—on October 23, 2020. Whether Sanfilippo's wire fraud charge is timely turns on whether the Information was "instituted" when the Government filed it within the limitations period or not until, as Sanfilippo contends, he waived his right to prosecution by indictment as required by Federal Rule of Criminal Procedure 7(b), which did not occur within the limitations period.[4] For five reasons, the Information was "instituted" when the Government filed it on October 23, 2020, rendering the wire fraud charge timely.

*First*, the plain meaning of both § 3282(a) and Rule 7(b) show that filing an information institutes it.

The starting point for defining "instituted" must be the statutory text. The primary canon of statutory interpretation directs that the "plain meaning" of a word controls if it is unambiguous. *Miccosukee Tribe of Indians of Fla. v. Southern Everglades Restoration All.*, 304 F.3d 1076, 1086 (11th Cir. 2002); *see also Rojas*,

---

[4] The Fifth Amendment of the United States Constitution guarantees that criminal defendants have the right to be prosecuted by indictment, meaning they can be brought to trial on federal criminal charges only if at least 12 grand jurors agree that the charges alleged by the prosecutor are supported by probable cause. U.S. Const. amend. V. Federal Rule of Criminal Procedure 7(b) gives effect to that constitutional right by requiring that felonies "be prosecuted by an indictment" unless the defendant has committed a non-capital felony and agrees to "be prosecuted by information" and "waive prosecution by indictment" in "open court and after being advised of the nature of the charges and of [his] rights." Fed. R. Crim. P. 7(b).

718 F.3d at 1319 ("The starting point for statutory interpretation purposes 'is the language of the statute itself.'" (quoting *United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1223 (11th Cir. 2012)). In determining the "plain meaning" of a word, courts look to dictionary definitions while considering the word's specific context within the sentence and general context within the statutory scheme. *United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1223 (11th Cir. 2012) (explaining the court will "analyze the language of the provision at issue, the specific context in which that language is used, and the broader context of the statute as a whole" to determine the meaning of a statutory term). And there is a presumption that Congress is deliberate in the words that it includes and that it omits from a statute, which informs the meaning of the included words. *Patel v. U.S. Att'y Gen.*, 917 F.3d 1319, 1327 (11th Cir. 2019).

Section 3282 states that the "information" must be "instituted." 18 U.S.C. § 3282(a). "Instituted" means "inaugurate[d]," "commence[d]," "start[ed]," or "introduce[d]." *Black's Law Dictionary* 800 (6th Ed. 1990); *see also Webster's New International Dictionary* (3d ed. 1993) (defining "instituted" as "caus[ing] to come into existence"). And, back in 1785—five years before Congress enacted the original version of the federal statute of limitation that included the phrase "the indictment or information for the same shall be found or instituted"—Dr. Johnson's dictionary defined "institute" as to "establish" or to "enact." Crimes Act of 1790, ch.9, § 32, 1

Stat. 112, 119; Samuel Johnson, *A Dictionary of the English Language* (6th ed. 1785) (defining "institute" as "[t]o establish; to appoint; to enact; to form and prescribe," "[t]o found; to originate and establish," and "[t]o begin; to commence; to set into operation"). Further, although in a different statutory context, the Supreme Court defined "instituted" in exactly that fashion, stating that term requires "commencement." *Gollust v. Mendell*, 501 U.S. 115, 124 (1991). Thus, "instituted" has always meant the establishment or commencement of an item.

The object of the verb "instituted" in § 3282(a) is the noun "information," so what must be "established" or "commenced" is the "information." Because it is a legal pleading, an information comes into existence when it is filed with and the courts. Thus, it is instituted when it is filed. Indeed, once filed, an information takes on its inherent powers—it institutes the formal charges against the defendant, it confers subject matter jurisdiction on the federal courts, it permits the defendant to file responsive legal pleadings, and it permits case management procedures to begin. *See, e.g.*, *United States v. Cotton*, 535 U.S. 625, 629-30 (2002); Fed. R. Crim. P. 9.

While Sanfilippo asserts that filing an information does not confer subject matter jurisdiction on the court (Br.:10-12), he is wrong. Federal subject matter jurisdiction is conferred by statute, and, under 18 U.S.C. § 3231, "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Based on that statute,

the Supreme Court held in *Cotton* that, so long as the charging document states an offense "against the laws of the United States," then federal courts have subject matter jurisdiction regardless of any legal or procedural defects in that charging document. 535 U.S. at 629-30; *United States v. McIntosh*, 704 F.3d 894, 903 (11th Cir. 2013) ("An indictment's relationship to jurisdiction is thus based on whether it alleges conduct constituting a federal offense, not on some intrinsic value of an indictment as such. . . . This understanding of jurisdiction explains why a defendant can waive an indictment and consent to proceed by information; i.e., the court maintains jurisdiction so long as the information alleges a federal offense."). Indeed, in *Kontrick v. Ryan*, the Supreme Court elaborated that court-proscribed procedural rules—including the Federal Rules of Criminal Procedure—neither create nor withdraw jurisdiction. 540 U.S. 443, 454-55 (2004); *see also United States v. Sanchez*, 269 F.3d 1250, 1273-74 (11th Cir. 2001) ("The constitutional rights to be charged by a grand jury, be informed of an accusation, and to have a jury trial are the personal rights of the defendant and do not go to the district court's subject matter jurisdiction."); *United States v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008) (holding that the "absence of a waiver of indictment" as required by Rule 7(b), "is a non-jurisdictional defect" under *Cotton*). Thus, filing an information gives the district court jurisdiction over the case and commences it.

Accordingly, under that plain and unambiguous meaning of the words in § 3282(a), "the information is instituted" when it is filed with the district court. Because there is no suggestion in § 3282(a) of any further requirement, that clear statutory language can be the beginning and end of the analysis. *Conn. Nat'l Bank v. Germain*, 503 U.S. 2439, 253-54 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."); *see Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994) ("[E]ven where there are . . . contrary indications in the statute's legislative history . . . we do not resort to legislative history to cloud a statutory text that is clear.").

And, contrary to Sanfilippo's contentions, the plain language of Rule 7(b) supports, not detracts, from that conclusion. Under Sanfilippo's theory—that the statute of limitations is not tolled until the defendant tells the court that he is waiving his right to be prosecuted by indictment (Br.:11-12)—"instituted" in § 3282(a) must be synonymous with "prosecuted" in Rule 7(b). But the text of Rule 7(b) shows that it is not.

Rule 7(b) states that a felony "may be *prosecuted* by information if the defendant—in open court and after being advised of the nature of the charge and of the defendant's rights—waives prosecution by indictment." Fed. R. Crim. P. 7(b) (emphasis added). That rule does not reference the statute of limitations or when an information is "instituted"; it merely provides the mechanism a defendant must use

to waive his Fifth Amendment right to indictment by a grand jury before he can be adjudicated on the charges against him. Under their plain meaning, "instituted" as used in § 3282(a) and "prosecuted" as used in Rule 7(b) are not equivalent. To "institute" is less than to "prosecute." Indeed, the verb "to institute" means to inaugurate or establish—it connotes the creation of a legal pleading—while the verb "to prosecute" means to "institute *and* pursue a criminal action against (a person)"—it connotes the legal document's ultimate denouement in an adjudication. *See* Institute, *Black's Law Dictionary* (11th ed. 2019); Prosecute, *Black's Law Dictionary* (11th ed. 2019) (emphasis added).

And Congress knew of Rule 7(b) when it passed § 3282(a), yet it declined to make the defendant's waiver of prosecution by indictment or the court's ability to adjudicate the information the tolling event. *See White v. Mercury Marine, Div. of Brunswick, Inv.*, 129 F.3d 1428, 1434-35 (11th Cir. 1997) ("Congress is assumed to act with the knowledge of existing law and interpretations when it passes new legislation."). Instead, Congress stated that institution alone was sufficient to toll the statute of limitations and there is nothing in § 3282(a) that suggests that the information must also be able to support a prosecution before the expiration of the limitations period. Indeed, by its very terms, Rule 7(b) presupposes the existence of an instituted information—if the case was not begun by filing the information, the court would not have jurisdiction to advise the defendant of the charges or to accept

his waiver of prosecution by indictment. Thus, "Rule 7 is just a claim-processing rule" that "describes the process by which a defendant . . . may waive the protections of [the Fifth] Amendment." *United States v. Hartwell*, 448 F.3d 707, 717 (4th Cir. 2006).

This distinction between "instituted" in §3282(a) and "prosecuted" in Rule 7(b) makes sense when the different purposes of the statute of limitations and the procedural rule are considered. The statute of limitations is an affirmative defense that can be waived and that is concerned with the inception of the case—its ensures defendants receive timely notice of the criminal allegations so that they can marshal a defense while witnesses and evidence are still available and to encourage law enforcement to expeditiously investigate crimes. *United States v. Marion*, 404 U.S. 307, 322, n. 14 (1971) (explaining statutes of limitations "represent legislative assessments of relative interests of the State and the defendant in administering justice" and "promote justice by preventing surprises through the revival of claims that have been allowed to slumber, memories have faded, and witnesses have disappeared"); *United States v. Ratcliff*, 245 F.3d 1246, 1253 (11th Cir. 2001) ("Notice to the defendant is the central policy underlying the statute of limitations."). Both purposes are satisfied by filing an information—no matter if the defendant has waived his right to prosecution by indictment—because a filed information gives the defendant notice of the allegations against him in a formal legal pleading, guarantees

27

against stale criminal charges and the potential loss of access to exculpatory witnesses or evidence, and ensures that law enforcement completes its investigation promptly. Indeed, in this case, the Government hand-delivered a copy of the Information to Sanfilippo within days of its filing, advised Sanfilippo to retain counsel, and instructed Sanfilippo on how to obtain court-appointed counsel, allowing him to begin preparing his defense (DE:10-1; DE:17:2).

Rule 7(b), on the other hand, is claim-processing rule concerned with the conclusion of the case—its purpose is to ensure compliance with the Fifth Amendment right to prosecution by indictment by creating a procedural hurdle that a defendant must cross before he can waive that constitutional right. Tolling the statute of limitations before a defendant invokes or waives his right to prosecution by indictment does not impact this Constitutional protection. Instead, as Rule 7(b) makes clear, a defendant cannot be adjudicated on the charges in an information— meaning he can neither plead guilty to them nor be tried upon them—until he knowingly waives his right to prosecution by indictment. He can make that waiver— or decline to make that waiver—at any time, including after the statute of limitations has expired, because it is concerned with the conclusion of the criminal proceedings, not their beginning.

The rest of § 3282(a) supports that plain meaning reading of "instituted" and "prosecuted" as different things. In determining the plain meaning of a statute, courts

"must look to the particular statutory language at issue as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Accordingly, "[w]hen Congress uses different language in similar sections," the Court should give those words "different meanings." *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1089 (11th Cir. 2017). In its entirety, § 3282(a) states, "no person shall be *prosecuted*, tried, or punished for any offense, not capital, unless the indictment is found or the information is *instituted* within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a) (emphasis added). By using the terms "prosecuted" and "instituted" in the same sentence, Congress showed that the two verbs carry distinct meanings; "instituted" is something less than "prosecuted." To read the statute in any other way would render Congress' use of two verbs unnecessary.

The entire federal statute of limitations reflects that distinction as well. In 18 U.S.C. §§ 3288 and 3289, Congress created two saving clauses for charges brought in indictments and informations filed within the limitations period but then dismissed either after the limitations period ran (18 U.S.C. § 3288) or with less than six months remaining in the limitations period (18 U.S.C. § 3289). In both instances, Congress decided that an extra six-month limitations period would apply to the dismissed charges. *See* 18 U.S.C. §§ 3288, 3289. Importantly for instant purposes, both §§ 3288 and 3289 explain that the saving clause has only two exceptions: (1)

29

the reason for the dismissal "was the failure to *file* the indictment or information within the period prescribed by the applicable statute of limitations" or (2) the reason for the dismissal was "some other reason that would bar a new prosecution." *Id.* (emphasis added). Thus, the saving clauses apply to an information dismissed for "any" reason so long as it was "file[d]" within the limitations period. That verb choice in §§ 3288 and 3289—"filed"—to describe the act that rendered the indictment or information timely shows that Congress intended for the terms "instituted" and "filed" to be synonymous with respect to an information.

That Congress used the term "instituted" in § 3282(a), which was written in 1790, and the term "filed" in § 3288, which was first written using that phrase in 1948, to describe the same moment—when the statute of limitations is tolled by an information—is logical. In 1790, Congress needed to specify that an indictment tolled the statute of limitations when it is "found"—meaning grand jurors agreed the allegations written by the prosecutor were supported by probable cause—and an information tolls the statute of limitations when it is "instituted"—meaning the prosecutor signed the list of allegations—to illustrate the different paths that an indictment and an information take in drafting before they can be filed as a legal pleading. *See* Crimes Act of 1790, ch. 9, § 32, 1 Stat. 112, 119; *see also* Fed. R. Crim. P. 6(f); Fed. R. Crim. P. 7(a). Thus, by using "found" for indictments and "instituted" for informations, § 3282(a) made it clear that an indictment and an

30

information still had to adhere to differing requirements for drafting to toll the statute of limitations. By the time Congress wrote § 3288 in 1948, it did not need to be concerned with specifying the different pre-filing evolution of indictments and informations, because the Federal Rules of Criminal Procedure had been enacted and delineated the different drafting requirements for indictments and informations. *See* Fed. R. Crim. P. 6 (1946). And with the Federal Rules of Criminal Procedure laying out the differing drafting requirements, the verb "filed" could be used to cover both an indictment and an information in a single, more concise clause, because it is the final step of filing that tolls the statute of limitations for all charging documents no matter what had to occur to ready the document for that "filing" and tolls the statute of limitations.

And the rest of the Federal Rules of Criminal Procedure—specifically Rule 6(f)—also supports that plain meaning reading of "instituted" and "prosecuted" as different things. The statute of limitations is tolled when "the indictment is found." 18 U.S.C. § 3282(a). But, under Rule 6(f), a grand jury must "return" an indictment—meaning publicly docket it—before the defendant can be adjudicated. Fed. R. Crim. P. 6(f). The title of Rule 6(f) is "Indictment and Return," connoting that the establishment of an indictment—its "finding" as stated in § 3282(a)—and its "return" as required by Rule 6(f) are separate procedural moments. *See Carter v. United States*, 520 U.S. 255, 267 (2000) ("[T]he title of a statute is of use only when

it sheds light on some ambiguous word or phrase in the statute itself."). And, like Rule 7(b) and "instituted," Rule 6(f) says nothing about when an indictment is "found." Instead, as with informations, the pivotal statute-of-limitations moment for indictments is when a prosecutor's allegations evolve into formal legal charges that can be filed with the court. The additional requirement that the indictment be returned was omitted from § 3282(a), just as the additional requirement that an information come with a waiver of prosecution by indictment was omitted from § 3282(a).

*Second*, along with the plain meaning of § 3282(a) and Rule 7(b), the legislative history of the statutes of limitations also shows that filing an information institutes it and tolls the statute of limitations.

The first federal statute of limitations was enacted in 1790. *See* Crimes Act of 1790, ch. 9, § 32, 1 Stat. 112, 119. It stated, "nor shall any person be prosecuted, tried or punished for any offense, not capital, nor any fine or forfeiture under any penal statute, unless the indictment or *information* for the same shall be found or *instituted* within two years from the time of committing the offense." *Id.* (emphasis added). Thus, from the start, the federal statute of limitations was tolled when an information was "instituted." A year later, in 1791, the United States ratified the Fifth Amendment, which enshrined the individual right to be prosecuted by indictment on felony charges. *See* U.S. Const. amend. V. So, when Congress voted

on the statute of limitations, the right to prosecution by indictment did not exist. That underscores what the text shows: an information could be instituted for felonies simply by filing it with the court and the tolling of the statute of limitations did not turn on the defendant's conduct.

The forward-moving legislative history of § 3282(a) further supports that interpretation. Rule 7(b), along with the other Federal Rules of Criminal Procedure, was adopted in 1946. Fed. R. Crim. P. 7 (1946 adoption). Since 1946, Congress has amended § 3282(a) four times. *See* Act of June 25, 1948, ch. 645, 62 Stat. 828 (changing the limitations period from five to three years and adding exceptions for certain crimes); Act of Sept. 1, 1954, ch. 1214, § 12(a), formerly §10(a), 68 Stat. 1145 (changing the limitations period back to five years); Act of Sept. 26, 1961, § 12(a), 75 Stat. 648 (changing the effective date of the amendment); Act of Apr. 30, 2003, § 610, 117 Stat. 692 (adding an exception for certain offenses). At every amendment, Congress knew that, under Rule 7(b), defendants charged with felony offenses had to waive their right to prosecution by indictment before they could be adjudicated on an information. Yet, Congress never altered, amended, or deleted the phrase "information is instituted" in § 3282(a) to give it a deeper or different meaning.

Indeed, when Congress last amended § 3282(a) in 2003, *see* Act of Apr. 30, 2003, § 610, 117 Stat. 692 (adding an exception to the statute of limitations for

certain offenses), the Seventh Circuit and two district courts had held that filing an information tolls the statute of limitations in § 3282(a) and that the defendant's waiver of prosecution by indictment is irrelevant to the statute of limitations calculus. *See United States v. Burdix-Dana*, 149 F.3d 741, 743 (7th Cir. 1998); *United States v. Hsin-Yung*, 97 F. Supp. 2d 24, 28 (D.D.C. 2000); *United States v. Watson*, 941 F. Supp. 601, 603 (N.D. Wa. 1996). In the face of that consistent body of common law interpreting what "instituted" means in § 3282(a), Congress again elected not to alter that statutory text. As the Supreme Court explained, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *White*, 129 F.3d at 1434-35 ("Congress is assumed to act with the knowledge of existing law and interpretations when it passes new legislation."). As written, § 3282(a) tolls the statute of limitations when an information is filed with the court no matter if the defendant ultimately consents to be prosecuted by it.

The legislative history of § 3288 also supports this interpretation. In 1964, Congress amended § 3288 to state that the saving clause only applied to an information that was filed within the limitations period "after the defendant waives in open court prosecution by indictment." Pub. L. 88-520, § 1, 78 Stat. 699 (1964). But in 1988, Congress removed that language. A defendant is no longer required to

waive prosecution by indictment in open court, and, instead, the saving clause applies if an information was dismissed "for any reason" other than its failure to be "filed" within the limitations period or another reason that would bar re-prosecution entirely. That amendment expanded § 3288 and showed that Congress, at least after 1988, did not intend a defendant's waiver of his right to prosecution by indictment to play any role in the determination of when the statute of limitations is tolled. And, of course, Congress knew of that 1988 amendment to § 3288 when it last amended § 3282(a) in 2003, yet it did not alter or amend the phrase the "information is instituted."

*Third*, nearly every court to address this issue has agreed that filing an information institutes it and tolls the statute of limitations

The Seventh Circuit—in an opinion resoundingly found to be persuasive and that has gone over 20 years without contradiction from any Circuit—was the first court to hold that an information is instituted and tolls § 3282(a) when it is filed with the court, not when the defendant waives prosecution by indictment under Rule 7(b). *United States v. Burdix-Dana*, 149 F.3d 741, 743 (7th Cir. 1998). The court explained, while Rule 7(b) requires a waiver of prosecution by indictment before the charges can be adjudicated, Rule 7(b) does not forbid the filing of an information without a waiver. *Id.* The Court reasoned "[w]e do not see how this rule affects the statute governing the limitation period. There is nothing in the statutory language of

§3282 that suggests a *prosecution* must be instituted before the expiration of the five year period; instead the statute states that the *information* must be instituted." *Id.*. Thus, *Burdix-Dana* held that the text of § 3282(a) is clear that the filing of an information alone is "sufficient to institute it within the meaning of" the statute and toll the limitations period. *Id.*; *see also United States v. Thompson*, 287 F.3d 1244, 1249-50, 1253 n.4 (10th Cir. 2002) (applying *Burdix-Dana*'s logic to indictments under Rule 6(f)).

Many district courts have found *Burdix-Dana* persuasive and agreed that § 3282(a) is tolled when an information is filed with the court. *See e.g.*, *United States v. Weiss*, 588 F. Supp. 3d 622, 628 (E.D. Pa. 2022) (holding information is "instituted" and tolls a criminal statute of limitations when it is filed, not when the defendant formally waives his right to indictment); *United States v. Rosecan*, 528 F. Supp. 3d 1289, 1292-93 (S.D. Fla. 2021) (holding plain language of § 3282(a) is clear that an information is "instituted" when it is filed with the court); *United States v. Kruse*, No. 1:20-CR-249 (W.D. Tex. Dec. 21, 2020) (holding filing an information without a waiver of prosecution by indictment instituted the information); *United States v. Dixon*, No. 6:20-cr-00006 (W.D. Va. Oct. 26, 2020) (A "waiver of indictment need not accompany an information for it to be 'instituted' for purposes of § 3282(a)."); *United States v. Holmes*, No. 18-cr-00258, 2020 WL 6047232, *8 (N.D. Cal. Oct. 13, 2020) ("[T]he filing of an information without an accompanying

waiver is sufficient to toll the statute of limitations.");*United States v. Briscoe*, No. 20-0139, 2020 WL 5076053, at *2 (D. Md. Aug. 26, 2020) ("[A]n information is instituted when it is properly filed, regardless of the Defendant's waiver."); *United States v. Marifat*, No. 2:17-0189, 2018 WL 1806690, *2-3 (E.D. Cal. Apr. 18, 2018) (finding *Burdix-Dana* "instructive" before holding information "instituted" when filed with court); *United States v. Stewart*, 425 F. Supp. 2d 727, 729 (E.D.VA. 2006) ("Filing a criminal information for the purposes of instituting it to toll the statute of limitations and the defendant's right to waive indictment in open court before being prosecuted on a criminal information are two different things."); *Hsin-Yung*, 97 F. Supp. 2d at 28 ("Rule 7(b) does not prohibit the filing of an information in the absence of waiver of indictment by the defendant."); *Watson*, 941 F. Supp. at 603 (holding information is "instituted" when it is "filed with the clerk of the court").

To argue all those courts are wrong, Sanfilippo relies on one outlier district court order, *United States v. Machado*, No. 04-10232, 2005 WL 2886213 (D. Mass. Nov. 3, 2005) (Br.:13-14). The reasoning of *Machado* has been repeatedly rejected for good reason. In *Machado*, the court effectively rewrote § 3282(a), defining "instituted" to include "prosecution" of a criminal action, despite the statute containing no such requirement. 2005 WL 2886213, at *2. Thus, the court reasoned, because a "prosecution" includes both the "institution" of a criminal action and the subsequent proceedings, "institute" in § 3282(a) must require that the statute of

limitations cannot be tolled until the defendant can be validly adjudicated on the charging document. *See id.* at *2.

That reasoning is unpersuasive. As outlined above, other courts have interpreted Rule 7(b)'s prohibition on "prosecution" in a narrower manner, referring only to actions after the filing of an information or indictment. *See, e.g.*, *United States v. Cooper*, 956 F.2d 960, 962 (10th Cir. 1992) ("Rule 7(b) does not prohibit the filing of an information in the absence of waiver of indictment by the defendant. Instead, the rule proscribes prosecution without waiver."). And § 3282(a) requires the institution of an information, not the institution of a prosecution, to toll the statute of limitations. Thus, even if *Machado*'s interpretation of the term "prosecution" is correct, Rule 7(b) would simply require that a waiver of indictment be filed with an information before the criminal action or prosecution could be "instituted," not before the information could be "instituted."

**Fourth**, any implications that Sanfilippo seeks to divine from the CARES Act and Congress' decision not to adopt legislation tolling the statute of limitations during the COVID-19 pandemic are of no moment (Br.:7). Nothing in that Act, or its legislative history, touched on the meaning of § 3282(a) or the use of an information to charge defendants during the pandemic. In addition, when that legislation was passed, there was a consensus among courts that filing an information tolls the statute of limitations—the only clear outlier was *Machado*—

38

thus rendering a statutory tolling of the statute of limitations an unnecessary remedy to cure any consequences of the decision made by some federal districts to suspend grand juries. *See Cannon v. University of Chicago*, 441 U.S. 677, 696-97 (1979) (quoting the maxim that courts "assume that Congress is aware of existing law when it passes legislation").

*Fifth*, Sanfilippo's contention that the Government could have indicted him in a different district where grand juries were sitting (Br.:7) is belied by the record. All Sanfilippo's charged offense conduct—defrauding a wealthy widow by convincing her to give him money to invest in a non-existent company in the Cayman Islands—occurred in the Southern District of Florida where Sanfilippo, his victim, and his banking activities were located. Further, as a practical matter, moving venue would have been complicated if not impossible given the ever-changing travel bans, quarantine requirements, and other safety measures needed to protect the public health during the COVID-19 pandemic.

Thus, the Information was "instituted" before the statute of limitations expired, rendering the wire fraud charge timely.

Because the wire fraud charge in the Information was timely under § 3282(a), the wire fraud charge in the Indictment was also timely. Under § 3288, there is a six-month grace period for re-filing an information or indictment that has been dismissed for any reason after the statute of limitations has expired. Specifically,

> Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, . . . or, *if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular grand jury is convened*, which new indictment shall not be barred by any statute of limitations.

18 U.S.C. § 3288 (emphasis added). This provision applies unless "the reason for the dismissal was the failure to file the indictment or information within the period proscribed by the applicable statute of limitations, or some other reason that would bar a new prosecution." *Id.*

Section 3288 applies when an underlying information is dismissed in response to a defendant's assertion of his right to prosecution by indictment, because the statute applies to dismissal "for *any reason* after the period prescribed by the applicable statute of limitations has expired[.]" 18 U.S.C. § 3288 (emphasis added). Accordingly, § 3288 applies to an "information that was a nullity because only an indictment would suffice[.]" *United States v. Macklin*, 535 F.2d 191, 193 (2d Cir. 1976). Indeed, in 1964 Congress amended § 3288 to "permit re-prosecution by indictment of a defendant whose conviction had been vacated even when the court had been without jurisdiction to proceed under the original information." *Macklin*, 535 F.2d at 193; *see also United States v. Charnay*, 537 F.2d 341, 355 (9th Cir.

40

1976) ("[A] second indictment may properly be returned within the prescribed six-months period where the dismissal of the first indictment is due to a legal defect."). Section 3288's capacious language encompasses the reason animating the Government's dismissal of the Information under Rule 48(a)—its non-compliance with Rule 7(b).

The only exception in the text of § 3288 is where the original charging document was dismissed for "failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution." 18 U.S.C. § 3288. The Government filed the Information within the five-year limitations period and a dismissal resulting from non-compliance with Rule 7(b) is not a dismissal that would bar a new prosecution. Indeed, the "very purpose for which § 3288 was enacted" was to allow "a second indictment to remedy legal deficiencies present in the first[.]" *United States v. Clawson*, 104 F.3d 250, 252 (9th Cir. 1996); *see also United States v. Italiano*, (11th Cir. 1990) ("We agree with other courts of appeals that have addressed the issue that § 3288 is available to correct legal defects as well as grand jury defects or irregularities."). Thus, § 3288 and its six-month extension apply when the Government moves to dismiss the information for failure to comply with Rule 7(b). *Burdix-Dana*, 149 F.3d at 743.

41

Here, the district court dismissed the Information on February 26, 2021, for failure to comply with Rule 7(b) (Case No. 20-60112 DE:5). The grand jury returned the Indictment on January 14, 2021 (DE:1). Thus, the Indictment was returned "within six calendar months of the date of dismissal," as is required by § 3288, rendering it timely.

Accordingly, the district court was correct, the wire fraud charge was timely, and this Court can affirm Sanfilippo's conviction.

## III. The District Court Correctly Held the Charge Against Sanfilippo Was Timely Because the Statute of Limitations Should Be Equitably Tolled.

This Court can also affirm the district court's determination that the wire fraud charge against Sanfilippo was timely because equitable tolling principles support extending the statute of limitations by less than three months to January 14, 2021, which was when the grand jury found the Indictment. In a footnote in his brief, Sanfilippo wrote, "at oral argument, the Government stated that it does not seek to toll the statute of limitations in this case by any means (e.g., equitable tolling) other than 18 U.S.C. § 3288" (Br.:2, n.2). But that is not true. Not only was there never any oral argument on Sanfilippo's motion to dismiss, but the Government also extensively argued that the statute of limitations should be equitably tolled in its written pleadings and the district court noted that equitable tolling argument in its order denying Sanfilippo's motion to dismiss (DE:10:11-13; DE:21:22-23). Thus, the equitable tolling argument was raised. It is also persuasive.

42

"Equitable tolling" is a doctrine under which a party may bring an action after the statute of limitations has expired if they were prevented from bringing the action because of inequitable circumstances. *See Bailey v. Glover*, 88 U.S. 342 (1874) (explaining when a party injured by another's fraudulent conduct "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered . . ."); *Osternek v. E.T. Barwick Indus.*, 825 F.2d 1521, 1535 (11th Cir. 1987). Under this doctrine, a court has the authority to toll the statute of limitations until the court determines it would have been fair for the statute of limitations to cease running on the claims. *See Justice v. United States*, 6 F.3d 1474, 1475 (11th Cir. 1993).

Unless Congress states otherwise, equitable tolling should be read into every federal statute of limitations. *Homlberg v. Albrecht*, 327 U.S. 392, 395-96 (1946); *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95 (1990) (applying equitable tolling to waivers of sovereign immunity). Indeed, as the Supreme Court stated, "[i]t is hornbook law that limitations periods are customarily subject to equitable tolling[.]" *Young v. United States*, 535 U.S. 43, 50 (2002); *accord United States v. Locke*, 471 U.S. 84, 94 n.10 (1985) ("Statutory filing deadlines are generally subject to the defense[] of . . . equitable tolling."). That determination follows the "normal rule of statutory construction . . . that even if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."

43

*Midatlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986). Equitable tolling therefore applies to criminal statutes of limitations, including § 3282(a).

Although equitable tolling is more commonly applied to civil cases, "there is no reason to distinguish between the rights protected by criminal and civil statutes of limitations." *Powers v. Soutland Corp.*, 4 F.3d 223, 233 (3d Cir. 1993); *see also United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998) ("[C]riminal statutes of limitations are subject to tolling . . . [which] may be appropriate if . . . the plaintiff has 'in some extraordinary way' been prevented from asserting his rights."); *United States v. Levine*, 658 F.2d 113, 120 (3d Cir. 1981) ("Statutes of limitations further reflect an underlying legislative balance insofar as different crimes carry different time periods, and the statutes are subject to tolling, suspension and waiver."). And criminal limitations period serve the same purposes as their civil counterparts: repose, preventing staleness in evidence, and encouraging the prompt initiation of litigation—none of which conflict with equitable-tolling principles. *See Marion*, 404 U.S. at 322 n.14 (noting the policies behind civil and criminal statutes of limitations are similar). Accordingly, equitable tolling has been applied to time limits in criminal cases. *See, e.g.*, *Fallen v. United States*, 378 U.S. 139, 144 (1964) (equitably tolling time limit for filing a notice of appeal); *Grant v. Swarthout*, 862 F.3d 914, 923 (9th Cir. 2017) (equitably tolling the time limit for filing a habeas corpus

petition); *United States v. Terlingo*, 327 F.3d 216, 222 (3d Cir. 2003) (equitably tolling the time limit in which the government can seek criminal restitution).

Moreover, although "criminal limitation statutes are to be liberally interpreted in favor of repose," *Toussie v. United States*, 397 U.S. 112, 115 (1970), the Supreme Court has also recognized that time limits "sought to be applied to bar rights of the Government[] must receive a strict construction in favor of the Government," *Badaracco v. Commissioner*, 464 U.S. 386, 391 (1984). Thus, the Supreme Court will not "in expounding a statute, give to it a construction which would in any degree disarm the government of a power which has been confided to it to be used for the general good—or which would enable individuals to embarrass it, in the discharge of the high duties it owes to the community—unless plain and express words indicated that such was the intention of the Legislature." *Brown v. Duchesne*, 60 U.S. 183, 195 (1856).

Equitable tolling should apply here to extend the statute of limitations by less than three months in the wake of a years-long global pandemic. The Government had no way to foresee that a pandemic would suspend grand juries or that the Southern District of Florida would issue monthly extensions of the grand jury suspension for nearly eight months, making it impossible to indict cases during a significant portion of the limitations period on the wire fraud charge. The statute of limitations on Sanfilippo's charge expired on November 2, 2020, but grand juries in

the Southern District of Florida did not reconvene until November 17, 2020. And, after November 17, 2020, grand juries reconvened in only limited numbers to face a backlog of cases awaiting indictment. Indeed, between December 2019 and December 2020 only 68 grand jury sessions were held by the District Court for the Southern District of Florida; the year before it held 273 grand jury sessions. Statistical Tables for the Federal Judiciary, Table J-1 (Dec. 31, 2020), https://www.uscourts.gov/statistics/table/j-l/statistical-tables-federal-judiciary/2020 /21/31. And, because of that substantial decrease in the number of grand jury sessions, only 519 criminal charging documents were filed in the District Court for the Southern District of Florida in 2020, compared to the 1552 charging documents filed in that court the year before. Statistical Tables for the Federal Judiciary, Table D (Dec. 31, 2020), https://www.uscourts.gov/statistics/table/d-cases/statistical-tables-federal-judiciary/2020/12/31. On top of accounting for that pandemic-induced backlog on the grand jury, applying equitable tolling here is particularly justified because the Government filed a charging document before the statutory period expired to give Sanfilippo notice of the criminal allegations against him.

Accordingly, the wire fraud charge was timely and Sanfilippo's conviction can also be affirmed on this ground.

## Conclusion

In sum, this is a case in which the Government, faced with an unprecedented international public health crisis that shuttered grand juries and the courts for nearly eight months, complied with the clear requirements of the applicable statute of limitations first by instituting the Information within the five-year period—giving Sanfilippo notice of the allegations against him and the opportunity to waive prosecution by indictment while grand juries were suspended—and then by indicting Sanfilippo less than two months after the limited reconvening of grand jury began—honoring Sanfilippo's Fifth Amendment right to be prosecuted by a grand jury. That is precisely the kind of conduct that §§ 3282 and 3288 permit and that the doctrine of equitable tolling protects as it was the only way that the Government could both advance both the public interest in the prosecution of crimes and Sanfilippo's interest in his constitutional right to be indicted by a grand jury. And then Sanfilippo conceded as much when he entered a knowing and voluntary unconditional guilty plea that waived his argument that the Indictment was untimely. Accordingly, this Court should either dismiss Sanfilippo's appeal or affirm his conviction.

Respectfully submitted,

Markenzy Lapointe
United States Attorney

By:    s/Nicole D. Mariani
       Nicole D. Mariani
       Assistant United States Attorney
       99 N.E. 4th Street, #500
       Miami, FL 33132
       (305) 961-9285
       nicole.mariani@usdoj.gov

Lisa Tobin Rubio
Chief, Appellate Division

Emily M. Smachetti
Assistant United States Attorney

Of Counsel

**Certificate of Compliance**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,565 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-based typeface using Microsoft Word 2016, 14-point Times New Roman.

**Certificate of Service**

I hereby certify that four copies of the foregoing Brief for the United States were mailed to the Court of Appeals via Federal Express this 27th day of April 2023, and that, on the same day, the foregoing brief was filed using CM/ECF and served via CM/ECF on Humberto R. Dominguez, Esquire, counsel for Appellant.

:       s/Nicole D. Mariani
           Nicole D. Mariani
           Assistant United States Attorney

*ab*